```
        IN THE UNITED STATES DISTRICT COURT
     FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                    AT BLUEFIELD
```

**OHIO SECURITY INSURANCE COMPANY,**

    **Plaintiff,**

v.                                              CIVIL ACTION NO. 1:15-16264

**K R ENTERPRISES, INC., et al.,**

    **Defendants.**

### MEMORANDUM OPINION AND ORDER

Pending before the court are the defendants' motions to either dismiss this action or, in the alternative, stay this case until resolution of the underlying state court action. (ECF Nos. 22, 24, and 33). For the reasons set forth below, those motions are **DENIED**.

### I.  Factual and Procedural Background

Plaintiff Ohio Security Insurance Company ("Ohio Security") is an insurance company organized under the laws of New Hampshire with its principal place of business in Boston, Massachusetts. See Amended Complaint ¶ 5. Defendant K R Enterprises, Inc. ("K R Enterprises") is a Virginia corporation with its principal place of business located in Martinsville, Virginia. See id. at ¶ 6. Defendant Jackson Hewitt, Inc. is a Virginia corporation with its principal place of business in Parsippany, New Jersey. See id. at ¶ 7. During the relevant time period, Ohio Security issued a BusinessOwners Liability Policy to K R Enterprises, Policy Number

BZS (15) 56 08 16 29.  See Amended Complaint at ¶ 60.  The Ohio Security Policy also included Data Compromise and CyberOne Coverage endorsements.  See id. at ¶¶ 73 and 75.

The instant dispute centers on fraudulent tax returns filed by defendant Jeremy Evans, a former employee of defendant K R Enterprises, doing business as Jackson Hewitt.[1]  Specifically, former customers of K R Enterprises have alleged that Evans improperly accessed the records of K R Enterprises to obtain their personal and confidential information for the purpose of fraudulently filing their 2014 income tax returns.  All of the former customers had sought assistance preparing their 2013 tax returns from K R Enterprises and their confidential information had been saved in the company's database.

Upon discovering Evans' conduct, these customers of K R Enterprises filed suit in the Circuit Court of McDowell County, West Virginia, against Evans, K R Enterprises, and Jackson Hewitt raising various state law claims including, but not limited to, Breach of Fiduciary Duty, Negligence, and Invasion of Privacy.  There are six of these lawsuits currently pending in the McDowell County Circuit Court[2] and, as of the date these motions were

---

[1] According to the Amended Complaint, there was a franchise agreement between K R Enterprises and Jackson Hewitt.  See Amended Complaint at ¶ 3.

[2] These lawsuits are as follows: Bailey, et al. v. Jackson Hewitt, Inc., et al., Civil Action No. 15-C-50; Morgan v. Jackson Hewitt, Inc., et al., Civil Action No. 15-C-49; Presley, et al.

-2-

filed in this court, a motion to consolidate the underlying tort cases had been filed in the state court. All of the state lawsuits allege that Evans was arrested on or about February 4, 2015, at a K R Enterprise location and that Evans admitted to police that he had used the customers' 2013 tax return information to fraudulently file 2014 tax returns in their names. For his part, Evans faces criminal charges of identity theft, attempted felony, forgery, uttering, petit larceny, and fraudulent schemes.

On December 18, 2015, Ohio Security Insurance Company filed the instant declaratory judgment action on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332 and, on March 14, 2016, it filed an amended complaint. Ohio Security asks this court to determine that it has no duty to defend or indemnify K R Enterprises, Evans, or Jackson Hewitt[3] under the BusinessOwners liability coverage and/or or the Data Compromise and CyberOne coverage for the six underlying lawsuits.

Defendants' motions to dismiss and/or stay urge the court to decline to exercise its authority under the Declaratory Judgment

---

v. Jackson Hewitt, Inc., et al., Civil Action No. 15-C-48; Sacra, et al. v. Jackson Hewitt, Inc., et al., Civil Action No. 15-C-117; Vanover, et al. v. Jackson Hewitt, Inc., et al., No. 15-C-58; Wheeler, et al. v. Jackson Hewitt, Inc., et al., No. 15-C-48. See Amended Complaint at ¶¶ 18-59.

[3] The Amended Complaint alleges that Jackson Hewitt might be an additional insured under the Policy. See Amended Complaint at ¶¶ 80-82.

Act in favor of allowing the issue of coverage to be resolved by the pending state actions.

## II. <u>Analysis</u>

The Federal Declaratory Judgment Act ("the Act") provides in pertinent part that, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. This Act, which is permissive on its face, is understood to bestow upon federal courts "unique and substantial discretion in deciding whether to declare the rights of litigants." <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 286 (1995)(noting language of statute that a court "may" declare the rights and legal relations of interested parties).

In exercising its discretion, a court is to consider (1) whether the judgment would "serve a useful purpose in clarifying and settling the legal relations in issue," and (2) whether the judgment would "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." <u>Aetna Cas. & Sur. Co. v. Quarles</u>, 92 F.2d 321, 325 (4th Cir. 1937). Courts are cautioned against issuing declaratory judgments where the result would be "to try a controversy by

piecemeal, or to try particular issues without settling the entire controversy, or to interfere with an action which has already been instituted." Id.

The Fourth Circuit Court of Appeals has enunciated four specific factors by which the court's analysis is to be guided:

> (i) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts; (ii) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; . . . (iii) whether permitting the federal action to go forward would result in unnecessary "entanglement" between the federal and state court systems, because of the presence of "overlapping issues of fact or law" [; and (iv)] whether the declaratory judgment action is being used merely as a device for "procedural fencing" – that is, "to provide another forum in a race for res judicata" or "to achieve a federal hearing in a case otherwise not removable."

Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 257 (4th Cir. 1996)(quoting Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 376 (4th Cir. 1994)).

> Yet, clear as it is that district courts have discretion to stay or dismiss declaratory judgment actions when parallel state proceedings are underway that present opportunity for ventilation of the same state law issues, it is equally clear that this discretion is by no means unfettered. Indeed, allowing unfettered discretion would not give effect to Congress's clear intention in enacting the Declaratory Judgment Act to make the declaratory remedy available, as a general matter, in federal lawsuits. Thus, absent a good reason not to exercise jurisdiction, federal courts should hear declaratory judgment actions and provide declaratory relief where it is warranted by law and by the facts and circumstances of a particular case.

Zurich American Ins. Co. v. Public Storage, 697 F. Supp.2d 640, 643 (E.D. Va. 2010) (internal citations and quotations omitted).

With this background in mind, the court concludes that consideration of the Nautilus factors weighs in favor of the court's retaining jurisdiction over this matter.

*A. State Interest*

As to the first factor, whether West Virginia has a strong interest in deciding the issue, Ohio Security argues that it does not because, according to Ohio Security, Virginia law governs the interpretation of the policy. However, certain of the defendants contend that West Virginia law should govern the interpretation of the policy. See ECF No. 31.

Under West Virginia law, "the interpretation of insurance policy coverage, rather than liability, is treated as a contract question for purposes of conflicts analysis." Liberty Mut. Ins. Co. v. Triangle Indus., Inc., 390 S.E.2d 562, 565 (W. Va. 1990). West Virginia courts have traditionally applied the doctrine of lex loci contractus and held that the law of the state where the contract was made or to have been performed governs the interpretation of the contract. Johnson v. Neal, 418 S.E.2d 349, 341-52 (W. Va. 1992) (acknowledging West Virginia adheres to the "normal rule of applying in contract cases the ancient doctrine of lex loci contractus")

This general rule is subject to an exception. "[I]n a case involving the interpretation of an insurance policy, made in one state to be performed in another, the law of the state of formation of the contract shall govern, unless another state has a more significant relationship to the transaction and parties, or the law of the other state is contrary to the public policy of this state." Triangle Indus. 390 S.E.2d at 565.[4] Relying on Section 6 of the Restatement (Second) of Conflict of Laws, the Triangle court considered a number of factors in identifying the state with the most significant relationship, including:

>     (a) the needs of the interstate and international systems,
>
>     (b) the relevant policies of the forum,
>
>     (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>
>     (d) the protection of justified expectations,
>
>     (e) the basic policies underlying the particular field of law,
>
>     (f) certainty, predictability and uniformity of result, and
>
>     (g) ease in the determination and application of the law to be applied.

---

[4] Relying on Section 6 of the Restatement (Second) of Conflict of Laws, the Triangle court held that the law of the state of contract, New Jersey, should apply to a commercial general liability policy covering risk in several states, including West Virginia. Liberty Mut. Ins. Co. v. Triangle Indus., Inc., 390 S.E.2d 562, 567 (W. Va. 1990).

Id. at 567.

In this case, Ohio Security has proffered evidence that the policy herein was negotiated by a Virginia broker, Burch-Hodges-Stone, Inc., of Martinsville, Virginia, and issued to K R Enterprises, a Virginia corporation, to an address in Martinsville, Virginia. See Exhibit G to Amended Complaint at OSIC000001 (ECF No. 21-7). Because the policy was issued in Virginia, the court begins with the presumption that Virginia law applies. No other state has a more significant relationship to the transaction and the parties than Virginia. The Ohio Security Policy identifies thirty-two K R Enterprise locations, six of which are located in West Virginia and twenty-six of which are located in Virginia. See id. at OSIC0000014-15. Furthermore, the court does not find (nor do defendants argue) that the law of Virginia is contrary to the public policy of West Virginia. Therefore, under the rule of Triangle, Virginia law should govern interpretation of the Ohio Security policy and there are good reasons for doing so.

> As explained in Triangle Industries, application of the law of the state of formation ensures certainty, predictability, and uniformity of result and ease in the determination and application of the law to be applied. Furthermore, the uniformity and predictability of this rule satisfy the needs of the interstate system of the insurance industry. Finally, application of this rule results in the selection of a single rule of law for the contract, and thus, the parties to the contract do not have to negotiate separate contracts for each state where an insured risk is located.

Energy Corp. of America v. Bituminous Casualty Corp., 543 F. Supp.2d 536, 543 (S.D.W. Va. 2008).

Based upon the foregoing authorities, the court concludes that, at this juncture and unless defendants come forward with evidence to prove otherwise, Virginia law applies to the policy issued by Ohio Security to K R Enterprises. Given that Virginia law governs the policy, the court can see little interest why a West Virginia court would have a strong interest in interpreting an insurance policy governed by Virginia law. See Western World Ins. Co., Inc. v. Sur Developers and Builders, Inc., Civil No. WDQ-14-3967, 2015 WL 5675280, *6 (D. Md. Sept. 24, 2015) ("A state's interest in adjudicating a dispute depends, in part, on whether its law applies to the dispute."). However, "because there are no federal claims, this Court's interest in resolving the declaratory action is also not strong." Id. Accordingly, this factor is neutral.

B. *Efficiency*

When addressing the efficiency factor, the Fourth Circuit has urged district courts to conduct a "careful inquiry into 'the scope of the pending state court proceeding,' including such matters as 'whether the claims of all parties in interest [to the federal proceeding] can satisfactorily be adjudicated in [the state proceeding]." Nautilus, 15 F.3d at 378-379 (quoting Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 495 (1942)).

Ohio Security argues that the state court litigation will not answer the question of whether Ohio Security owes coverage to Jackson Hewitt as an additional insured. Jackson Hewitt has since supplemented the record to show that the state court has allowed it to amend its Answer and filed Third Party Complaint to assert its claims against Ohio Security. See ECF No. 50. Ohio Security also argues that it may not obtain relief against defendant Jeremy Evans in state court because he is incompetent because of his incarceration. To that end, Ohio Security has moved for appointment of a guardian ad litem on behalf of Evans in this proceeding. Because the state court proceedings would not resolve all the issues raised in the instant declaratory judgment action, the court concludes that dismissing this case would not promote efficiency because Ohio Security's claims against Jeremy Evans would not be resolved.

Accordingly, the court finds that the "efficiency" factor weighs slightly in favor of this court accepting jurisdiction.[5]

C. *Entanglement*

As to the third factor, whether overlapping issues of fact or law might create unnecessary entanglement between state and

---

[5] Furthermore, on March 17, 2017, Ohio Security has recently sought leave of this court to file an amended complaint seeking a declaration of rights as to another policy issued to K R Enterprises, as well as adding another defendant, Cathy S. Goodman, who has recently filed a lawsuit in the Circuit Court of McDowell County. See ECF No. 52.

federal courts, the court finds that allowing this action to go forward would not create unnecessary entanglement. With respect to the question of whether a district court should decline to exercise jurisdiction over a declaratory judgment action when it is being asked to determine whether an insurer has a duty to defend an insured under Virginia law because of unnecessary entanglement, the United States Court of Appeals for the Fourth Circuit has answered the question in the negative. See Penn-America Ins. Co. v. Coffey, 368 F.3d 409, 414 (4th Cir. 2004). In Coffey, a restaurant patron filed a lawsuit in state court alleging state law claims against a restaurant for injuries he sustained in the parking lot when he was struck by an automobile driven by another customer. See Coffey, 368 F.3d at 411. The liability insurer filed a declaratory judgment action in federal court against the insured restaurant and others seeking a declaration that it had no duty to defend or indemnify the restaurant in the underlying state court action. See id. at 411-12. One of the defendants filed a motion to dismiss the declaratory judgment action, "urging the district court not to adjudicate the coverage question while the state court case was pending." Id. at 411. The district court dismissed the action, concluding that deciding whether the insurer was obligated to defend and indemnify the restaurant "would require resolution of

-11-

the same factual issues of causation raised in [the] underlying state court action." Id. at 411-12.

The Fourth Circuit ruled that the district court abused its discretion in declining to hear the liability insurer's declaratory judgment action. See id. at 414–415. In disagreeing with the district court that resolution of the coverage issue would "result in entanglement, through gratuitous interference, with state court proceedings by preempting critical factual findings that the state court [would] have to make," the appeals court noted:

> [T]he duty-to-defend question in this case will not require the district court to resolve factual questions at all.  It need only decide such coverage by comparing what [plaintiff] has alleged in the state court action with the language of the [ ] insurance policy.  Under Virginia law, an insurer's duty to defend arises "whenever the complaint against the insured alleges facts and circumstances, some of which, if proved, would fall within the risk covered by the policy." Brenner v. Lawyers Title Ins. Corp., 240 Va. 185, 397 S.E.2d 100, 102 (1990); see also Va. Elec. & Power Co. v. Northbrook Prop. & Cas. Ins. Co., 252 Va. 265, 475 S.E.2d 264, 265-66 (1996).  And there is no duty to defend "if it appears clearly that the insurer would not be liable under its contract for any judgment based upon the allegations." Brenner, 397 S.E.2d at 102 (emphasis added).  Although an insurer's duty to indemnify will depend on resolution of facts alleged in the complaint, no such factfinding is necessary if there is no duty to defend because the allegations, even when taken as proved, would fall outside the policy's coverage.

Id. at 413.

Pursuant to Coffey, under Virginia law, determining whether an insurer has a duty to defend is relatively straightforward.

In deciding whether Ohio Security has a duty to defend K R Enterprises, Jackson Hewitt and Evans in the underlying lawsuits, under Virginia's "eight corners rule" the court looks only to the underlying complaints and determines whether the allegations therein come within the scope of the Policy's coverage. <u>AES Corp. v. Steadfast Ins. Co.</u>, 725 S.E.2d 532, 535 (2012); <u>see also</u> <u>CACI Int'l, Inc. v. St. Paul Fire and Marine Ins. Co.</u>, 566 F.3d 150, 155–56 (4th Cir. 2009); <u>Fuisz v. Selective Ins. Co. of Am.</u>, 61 F.3d 238, 242 (4th Cir. 1995). If the complaint alleges any facts that, if proved, would render Ohio Security liable under the Policy for a judgment against K R Enterprises and Jackson Hewitt, then Ohio Security must defend them in the underlying lawsuits. <u>See</u> <u>CACI</u>, 566 F.3d at 155. But if it is clear that Ohio Security would not be liable under the Policy for any judgment based on the allegations in the state court complaints, then Ohio Security has no such duty to defend. <u>See</u> <u>id.</u>

As to the duty to indemnify, it is narrower than the duty to defend. <u>See</u> <u>Brenner v. Lawyers Title Ins. Corp.</u>, 397 S.E. 2d 100, 102 (Va. 1990) (An "insurer's obligation to defend is broader than its obligation to pay."). Therefore, if there is no duty to defend, there can be no duty to indemnify. <u>See</u> <u>Marks v. Scottsdale Ins. Co.</u>, 791 F.3d 448, 454 (4th Cir. 2015) ("Because it is clear from the Marks Suit complaint that Scottsdale would not be liable for any judgment against Johnson, Scottsdale has no

duty to defend Johnson. It follows that Scottsdale also has no duty to indemnify Johnson in the Marks suit."); Morrow Corp. v. Harleysville Mut. Ins. Co., 101 F. Supp.2d 422, 426-27 (E.D. Va. 2000) ("[A] duty to defend may arise even though ultimately no duty to indemnify is found, but if there is no duty to defend ab initio, there can be no duty to indemnify.").

However, should this court determine that a duty to defend exists, it may reserve its ruling on the indemnification question until the conclusion of the underlying lawsuits. See Builders Mutual Ins. Co. v. Futura Group, LLC, 779 F. Supp.2d 529, 238 (Apr. 21, 2011) ("Of course, if there is no duty to defend, then there can be no duty to indemnify, and deciding that issue as early as possible promotes efficiency. If there is a duty to defend, then this Court will await the outcome of the state court case before considering the duty to indemnify issue, again promoting efficiency by not duplicating the fact finding conducted in the state court.").

For this reason, the court can discern no entanglement between the issues raised in this lawsuit and the underlying lawsuits. Accordingly, the court finds that the "entanglement" factor weighs in favor of accepting jurisdiction.

D.  *Procedural Fencing*

As to the fourth Nautilus factor, although Ohio Security filed this action after the Sacra defendants amended their state

law complaint to add Ohio Security as a defendant, the court is unpersuaded that the filing of this lawsuit was done merely as a device for procedural fencing.  Ohio Security was not a party to the other five lawsuits.  Furthermore, as discussed earlier, the Sacra lawsuit would not resolve Ohio Security's obligations vis a vis Jeremy Evans.  Therefore, the court cannot conclude that Ohio Security's filing of a comprehensive complaint, seeking to determine its rights and responsibilities in all the underlying lawsuits as well as with respect to Evans and Jackson Hewitt was mere procedural fencing.[6]  For these reasons, the court finds the fourth <u>Nautilus</u> factor weighs neither for or against dismissal of this action.

### III. <u>Conclusion</u>

Applying the four <u>Nautilus</u> factors to the instant case, the court is not persuaded that Ohio Security's rights and obligations can be fully resolved through the pending state actions.  Based on the foregoing, the court hereby **DENIES** defendants' Motions to Dismiss and/or Stay.

The Clerk is directed to send copies of this Memorandum Opinion and Order to counsel of record.

---

[6] The court is aware that the McDowell County Circuit Court has recently given Jackson Hewitt and K R Enterprises leave to amend in order to assert claims against Ohio Security in all of the state court actions.

It is **SO ORDERED** this 23rd day of March, 2017.

                        ENTER:

                        *David A. Faber* (signature)

                        David A. Faber
                        Senior United States District Judge